FILED
AUG 16 2023
PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NORTH CAROLINA

_Western_ DIVISION

CHRISTIAN PROFFITT )
_____)
_____)
(Enter above the full name
of the Plaintiff[s] in this
action).

Case No. 5:23-CV-00306-M
(To be assigned
by the Clerk of
District Court)

vs.

NORTH CAROLINA DEPT OF PUBLIC SAFETY )
_____)
_____)
_____)
(Enter above the full name of
**ALL** Defendant[s] in this action.
Fed.R.Civ.P.10(a) requires that
the caption of the complaint
include the names of **all** the
parties. Merely listing one
party and "et al." is insufficient.
Please attach additional sheets if
necessary).

_Amended_
**COMPLAINT**

1. Plaintiff resides at 1400 E CORNWALLIS RD, APT 931, DURHAM, NC 27713

2. Defendant(s) name(s): NORTH CAROLINA DEPT OF PUBLIC SAFETY

1

Location of principal office(s) of the named defendant(s):
512 NORTH SALISBURY ST, RALEIGH, NC 27699

Nature of defendant(s) business: PUBLIC SAFETY/CORRECTIONS

Approximate number of individuals employed by defendant:
6,000

3. This action is brought pursuant to Title VII of the Civil Rights Act of 1964 for employment discrimination. Jurisdiction is specifically conferred on this court by 42 U.S.C. § 2000e-5. Equitable and other relief are also sought under 42 U.S.C. § 20003-5(g).

4. The acts complained of in this suit concern:

    (A) _____ Failure to employ me.

    (B) _____ Termination of my employment.

    (C) _____ Failure to promote me.

    (D) \_\_X\_\_ Other acts as specified below:

FAILURE TO PROVIDE REASONABLE ACCOMODATION

DISCRIMINATION ON THE BASIS OF DISABILITY

RETALIATION

HOSTILE WORK ENVIRONMENT

CONSTRUCTIVE DISCHARGE

5. Plaintiff is:

    (A) _____ presently employed by the defendant.

    (B) \_\_X\_\_ not presently employed by the defendant.

    The dates of employment were 12/14/2020 - 5/19/2022 _____.

    Employment was terminated because:

    (1) \_\_X\_\_ plaintiff was discharged.

    (2) _____ plaintiff was laid off.

    (3) _____ plaintiff left job voluntarily.

6. Defendant(s) conduct is discriminatory with respect to the following:

    (A) _____ my race.

    (B) _____ my religion.

    (C) _____ my sex.

    (D) _____ my national origin.

    (E) \_\_X\_\_ other as specified below:

    my disability(ies)
_____

7. The name(s), race, sex, and the position or title of the individual(s) who allegedly discriminated against me during the period of my employment with the defendant company is (are):

RANDY LEON JONES - BLACK, MALE, CHIEF COURT COUNSELOR

JULIE FIPPS-HERNANDEZ - WHITE, FEMALE, COURT COUNSELOR SUPERVISOR

3

8. The alleged discrimination occurred on or about
_4/29/2022 - 5/12/2022_____.

9. The nature of my complaint, i.e., the manner in which the individuals(s) named above discriminated against me in terms of the conditions of my employment is as follows:

_See attached documents._____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____.

10. The alleged illegal activity took place at: _212 BIGGS ST._
_LAURINBURG, NC 28352_____

11. I filed charges with the Equal Employment Opportunity Commission regarding defendant(s) alleged discriminatory conduct on or about _06/02/2022_____. I have attached a copy of the Notice of Right to Sue letter issued by the Equal Employment Opportunity Commission. This letter was received by me on _____
_05/24/2023_____.

4

12. I seek the following relief:

   (A) __X__ recovery of back pay;

   (B) _____ reinstatement to my former job;

   (C) __X__ trial by jury on all issues so triable;

   and any other relief as may be appropriate, including

   injunctive orders, damages, costs and attorney's fees.

_8/16/23_
Date

_____
Signature of Plaintiff

1400 E Cornwallis Rd Apt 931
Durham, NC 27713
910-583-7680
Address and Phone Number of Plaintiff

5

**The nature of my complaint, i.e., the manner in which the individuals(s) named above discriminated against me in terms of the conditions of my employment is as follows:**

## I. MEDICAL BACKGROUND

I was diagnosed with Infertility in July of 2020 and Dysmenorrhea in September of 2021. The latter condition incapacitates me on a monthly basis and has done so since the age of 12. I was under the regular care and supervision of a doctor while employed with North Carolina Department of Public Safety (NCDPS) for both conditions, which required appointments on at least a monthly basis for medication management and fertility treatment. I subsequently developed and was diagnosed with Gastritis in April of 2022. This condition resulted in my inability to use medication that previously made my severe Dysmenorrhea manageable. Both conditions are presumed by my previous doctor and my current doctor to be caused by Endometriosis – a condition requiring an invasive surgery to confirm. This surgery was scheduled on May 4th, 2022 for the dates of June 1st, 2022 and June 6th, 2022. After my constructive discharge on May 13th, 2022 from NCDPS I lost my employer-sponsored medical insurance and could no longer afford the surgery.

## II. EMPLOYMENT HISTORY WITH NCDPS

I was hired as a Juvenile Court Counselor Trainee on December 14, 2020 by NCDPS. Upon being hired, I was informed by management and Human Resources that I would undergo a two-year training progression under the mentor of a tenured Juvenile Court Counselor before being promoted to Juvenile Court Counselor and performing the position's associated work duties independently. I carried out the duties of a Juvenile Court Counselor Trainee for 11 months. During these 11 months, I was approached by my then Chief Court Counselor, Randy L. Jones, on three separate occasions and asked if I wanted to assume the duties of Intake Court Counselor in Scotland County. Jones referenced my "eloquent vernacular", case management skills, and ability to competently present cases in court as their reasons

1

for pushing me into such a demanding opportunity prematurely. Each time, I expressed feelings of unpreparedness for the role of Intake Court Counselor, but eventually obliged after Jones' assurance that the workload would be low enough for any trainee to manage while still learning all of what encompassed the position of Juvenile Court Counselor. I was formally moved into the role of Intake Court Counselor and was made to fulfill the duties of this position independently on November 1st, 2021 without a formal change in job title or pay.

## III. FACTS OF ALLEGATIONS

I first informed my then supervisor, Julie Fipps-Hernandez, of my Dysmenorrhea on February 18th, 2022 when she witnessed me buckled over in pain during court. I informed her that I have had debilitating menstrual periods since I was a child and that I was currently experiencing an episode but did not have the medication I normally use to manage the condition available to me. In response to this, she offered me pain medication.

After receiving my Gastritis diagnosis on April 26th, 2022 and being instructed to discontinue the use of the aforementioned medication, I called Fipps-Hernandez on April 29th to inform her of the diagnosis, that I can no longer take the medication that relieves the symptoms of my condition, and that I needed to obtain medical accommodations for the days in which my condition disables me. Specifically, I requested to telework on the first day of my menstrual period. She commented that my condition sounds like it could be Endometriosis and stated that she would follow-up with Jones about this request. I never received follow-up from Fipps-Hernandez, nor anyone at NCDPS, about this medical accommodation request.

On May 6th, 2022, I received a call from Fipps-Hernandez at the end of the work day where she informed me that my use of earned sick leave was "excessive" and "shows poor work ethic". During this phone call, I reminded her of my Infertility and Dysmenorrhea, my request for medical

2

accommodations, and informed her that I was using this time to manage these disabilities and attend fertility treatment appointments. She ignored these concerns and responded that sick leave should be reserved only for days when I "really" needed them. I reiterated that I am, in fact, using these days for legitimate health conditions. She became frustrated and said that she, Jones, and I will be having a meeting next week regarding the nature of that phone call.

On May 10$^h$, 2022, I emailed Fipps-Hernandez and informed her that I was scheduled for a diagnostic surgery for Endometriosis. I also reminded her that medical accommodations will be needed for the first day of my upcoming menstrual period scheduled for May 20th, 2022. Fipps-Hernandez did not respond to this email until I sent a follow-up email requesting a response. When she responded, she did not address May 20th, nor did she address my notice of needing medical accommodation for this day.

On May 12th, 2022, I am called into a meeting with Jones and Fipps-Hernandez in which they discuss my work performance, my use of earned leave time, and my medical accommodation request. They told me I was not performing up to standard although there was no indication of this from any prior performance review. They then went on to my use of earned sick leave and made comparisons of my use of sick leave to other co-workers' by saying I had used the most sick time out of all other new hires since being under their employ – this is in spite of the fact that I had 14 hours of leave time remaining when this conversation took place and had never used, or requested to use, more time than what I had earned each month (accrual at 8 hours/month). In other words, I never used leave time in deficit. When I explained that I have medical conditions and medical appointments that this leave time was being used for, Jones quickly and sharply interjected, "We ALL have medical issues. We ALL have medical appointments." Fipps-Hernandez then mentioned that I requested medical accommodations by stating, "she even asked me for medical accommodations". Jones immediately responded that, "there will be NO medical accommodations". In this meeting, Jones stated that he could not see himself

3

referring me to be promoted to Juvenile Court Counselor and made it very clear that if we were to ever have a meeting about any of these things again, it will lead to a formal write up and termination.

Immediately after the meeting on May 12th, I called Human Resources and spoke with a female representative from NCDPS's HR department. I informed her of what happened in the meeting. I expressed that I wanted to file a formal complaint. She told me that I could either file it through my supervisor and Chief or file an EEOC claim.

On May 15th, 2022, I completed an exit survey that was sent to me by Human Resources Benefits Representative, Tia Wilder, which detailed all of the allegations mentioned in this complaint amongst other details that revealed the toxic work environment I was made to endure. I also sent a follow-up email to Wilder providing more details due to limited space on the survey form, wherein I stated that I felt as though I was being left with no choice but to resign. I never received a response to this email. I subsequently emailed Director of Court Services, Maxine Evans-Armwood, on May 18th, 2022, also informing her of everything that occurred during my tenure with NCDPS and requesting to be transferred to another district as opposed to resigning. I did not receive a response to this email, but was reached out to via phone call by Central Area Administrator, Miguel Pitts, on the same day. I also went into detail with Pitts regarding the treatment I experienced from Jones and Fipps-Hernandez while at NCDPS and requested to transfer to Cumberland County. Pitts informed me that I could not be transferred to another county due to the length of my employment with NCDPS being insufficient, and that my only option for recourse at that point was to file an EEOC claim. My last day of work at NCDPS was May 19th, 2022.

## IV. ALLEGATIONS AND ELEMENTS

### A. FAILURE TO PROVIDE REASONABLE ACCOMMODATION:

1. **Presence of a Disability Under the ADA:**

4

I am a qualified individual with the diagnoses of Infertility, Dysmenorrhea, and a presumed diagnosis of Endometriosis. Due to these conditions, I am substantially limited in my ability to walk, stand, lift, bend, and perform manual tasks and usually must sit or lie down due to the immense pain, nausea (to include vomiting), diarrhea, heavy bleeding, and faintness, on the first day of my menstrual period. Similarly, my Infertility not only substantially limits, but completely impedes the primary operative function of my reproductive system.

2. **Notice of Disability to NCDPS:**

    I proactively and consistently communicated my disabilities to my then supervisor, Fipps-Hernandez, on February 18th, April 29th, May 6th, May 10th, and May 12th of 2022. I also informed Jones and a representative in the Human Resources Department of my disabilities and need for accommodation on May 12th of 2022.

3. **Ability to Perform Essential Functions With Reasonable Accommodation:**

    NCDPS's own medical accommodation policy states that teleworking is an available and reasonable accommodation request for employees. I, as well as several other employees within the same position, were permitted to telework several times throughout my tenure for various reasons outside of a medical accommodation. Teleworking one day out of the month would not have disrupted NCDPS's operations, nor would it have imposed undue hardship on the department. All of my job duties, both essential and secondary, could have been and were always, fulfilled while teleworking.

4. **NCDPS's Refusal to Provide Reasonable Accommodations:**

    Contrary to their legal obligations under the ADA, Fipps-Hernandez and Jones categorically refused to engage in the interactive process required for me to secure necessary

5

medical accommodations. Alongside blatantly ignoring each request, their refusal was explicitly voiced in the meeting on May 12th, 2022 when Jones outright stated, "there will be NO medical accommodations." This denial, combined with overtly hostile remarks about my use of earned sick leave exhibits their sheer disregard for any of the medical accommodation requests I made.

B. **DISCRIMINATION ON THE BASIS OF DISABILITY**:

   1. **Existence of a Disability:**

      See allegations contained in the preceding paragraphs of this Complaint.

   2. **Qualification of Employment:**

      Despite the challenges posed by my medical conditions, I remained a competent employee for the role I was hired for within NCDPS and was often praised for the work I performed prior to the start of the managerial mistreatment. Receiving the requested accommodation of teleworking on the days in which my disability impaired me (one day a month), would have allowed me to manage the symptoms of my condition from a controlled environmental while still fulfilling the duties of my role. As mentioned above, the option to telework was one that was available to every employee within my position - with or without a medical accommodation request - and is explicitly listed as an available option for medical accommodations by NCDPS's ADA policy.

   3. **Discharge due to Disability:**

      My constructive discharge was directly caused by the discriminatory actions imposed by NCDPS upon my request for medical accommodations. After informing Fipps-Hernandez and Jones of my medical conditions and my need for accommodations, I was met with passive, and then finally, active resistance. The intimidating demeanor and ultimatum given by Jones during

the May 12th meeting forced me to conclude that I had no choice but to resign if I wanted to exercise the right to effectively manage my conditions. This resignation, stemming from an environment rendered untenable due to the failure to accommodate and open discrimination against my disability, constitutes a constructive discharge.

C. **RETALIATION:**

1. **Engagement in a Protected Activity:**

I consistently and clearly, via various mediums, communicated the nature of my medical conditions and the need for medical accommodations to Fipps-Hernandez and Jones. This is an activity that is protected under the ADA. I also attempted to make several complaints regarding Fipps-Hernandez's hostile treatment towards me which is another legally protected act. After attempting to engage in both of these protected acts, I was immediately threatened by Jones with disciplinary action.

2. **Adverse Action by the Employer:**

Adverse employment actions in the form of harassment were taken against me on May 6th, 2022 when Fipps-Hernandez labeled my use of earned sick leave for my medical conditions as "excessive" and indicative of "poor work ethic". This form of adverse employment action was also exhibited during the May 12th meeting where Jones and Fipps-Hernandez unjustifiably pulled me away from my work duties to scrutinize my performance and use of sick leave without providing documentation from any performance review. The overt denial of medical accommodations and threat of disciplinary action by Jones in the same meeting was an adverse action in and of itself, which led to the ultimate adverse employment action of constructive discharge and loss of employment.

7

3. **Causal Connection between the Protected Activity and the Adverse Action:**

Soon after communicating my medical condition and need for accommodations, Fipps-Hernandez criticized my use of sick leave, which I had already informed her was being used to manage these conditions. Additionally, a mere two days after informing Fipps-Hernandez of my scheduled surgery, I was called into a confrontational meeting where my job security was threatened based in part on my use of sick leave to manage my disabilities. After this meeting, feeling backed into a corner with no viable options left, I was compelled to resign.

D. **HOSTILE WORK ENVIRONMENT:**

1. **Qualified Individual with a Disability:**

See allegations contained in the preceding paragraphs of this Complaint.

2. **Subjected to Unwelcome Harassment:**

See allegations contained in the preceding paragraphs of this Complaint.

3. **Harassment Was Based on the Disability:**

When I reminded Fipps-Hernandez of my medical conditions and the reason for my use of sick leave during the phone call on May 6th, she invalidated my conditions by suggesting that sick leave should only be used when "really" needed. In the meeting with Jones and Fipps-Hernandez on May 12th, despite explaining my disabilities and the need to attend medical appointments to treat them, Jones stated, "We ALL have medical issues. We ALL have medical appointments."

4. **Harassment was Sufficiently Severe or Pervasive to Alter a Term, Condition, or Privilege of Employment:**

8

Not only were my medical accommodation requests outright denied on May 12th, but I was also threatened with statements that indicated I was unfit to complete and be promoted to Juvenile Court Counselor from Juvenile Court Counselor Trainee. I was also threatened with formal write-ups and termination by Jones during the May 12th meeting. This treatment was severe enough to lead to my constructive discharge seeing as though if I would have continued to take my earned sick leave for my conditions, the harassing and discriminatory treatment would have continued. Fipps-Hernandez and Jones created and forced me into a situation where I was left with three options: 1) resign and manage my disabilities free of harassment and discriminatory behavior, 2) continue to take my earned sick leave to manage my disabilities and continue suffering through the harassment and discrimination, or 3) suffer through my disabilities while at work in hopes that the harassing and discriminatory behavior from Fipps-Hernandez and Jones would eventually cease.

5. **Factual Basis to Impute Liability for the Harassment to the Employer:**

After the meeting on May 12th, I immediately reached out to the HR department at NCDPS. Despite detailing my experience and the actions of my superiors, I was given limited options for redress, one of which included filing a complaint through the very individuals who were responsible for creating the hostile and discriminatory work environment. Additionally, on May 15th, I emailed Wilder seeking redress but never received a response. I then emailed Evans-Armwood on May 18th to explain in detail the allegations highlighted in this complaint and to request to be transferred to another district. I did not receive a response to this email but was instead reached out to by Pitts who informed me that a transfer could not be honored and that nothing else could be done other than filing an EEOC complaint. This lack of effective recourse highlights NCDPS's failure in its duty to address and rectify this situation despite my incessant, yet futile, attempts.

9

8/16/2023

*Christian Proctor*