IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-00306-M-RN

**FILED**

SEP 27 2023

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

**CHRISTIAN PROFFITT,**

Plaintiff,

vs.

**NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY,**

Defendant

**MOTION FOR DEFAULT JUDGEMENT**

Pursuant to Rule 55, I, Christian Proffitt (Plaintiff), hereby respectfully move the Court to enter a Default Judgment in my favor and against the Defendant, North Carolina Department of Public Safety (NCDPS) based on the failure of this Defendant to answer or otherwise defend in this matter, as required by Rule 12. I request a Default Judgement awarding monetary relief on the grounds that 1) I am entitled to the relief demanded in the amended Complaint filed herein, and 2) Default has been entered against the above-named Defendant for failure to answer or otherwise defend as to all claims herein.

**I. BACKGROUND**

The amended Complaint was filed on August 16th, 2023 against the Defendant and alleged the following:

1) FAILURE TO PROVIDE REASONABLE ACCOMMODATION

2) DISCRIMINATION ON THE BASIS OF DISABILITY

3) RETALIATION

1

4) HOSTILE WORK ENVIRONMENT

5) CONSTRUCTIVE DISCHARGE

These acts were alleged, specifically, against Court Counselor Supervisor, Julie Fipps-Hernandez, and Chief Court Counselor, Randy L. Jones, for their refusal to engage in the interactive process required to secure reasonable accommodation for my disabilities of Infertility, Dysmennorrhea, and a presumed disability of Endometriosis. Despite being made aware of these conditions and its limiting effects on several different occasions, as well as being approached with the specific accommodation request of teleworking 1 day out of the month to help manage the disabling effects of my conditions, Jones and Fipps-Hernandez still refused to engage in the interactive process and threatened disciplinary action, to include termination, in response to it.

The Defendant was properly served with the amended Complaint and summons on September 1st, 2023. The Defendant failed to answer or otherwise defend within the required time frame specified by law, making them subject to a Default Judgment.

## II. PROOF OF SERVICE

Attached hereto, as Exhibit B, is the Affidavit of Service completed and filed by the US Marshall. These documents confirm that the Defendant was properly served in accordance with applicable procedural rules. *See Exhibit B.*

## III. FACTUAL ALLEGATIONS AND EVIDENCE

In an effort to proceed in compliance with NCGS Rule 55 (f), evidence of each allegation will be attached to assist with the process of entering a Default Judgment against NCDPS. The facts and evidence surrounding the allegations are as follows:

2

1. I am a qualified individual with a diagnosis of Infertility, Dysmenorrhea, and a presumed diagnosis of Endometriosis. Due to these conditions, I am substantially limited in my ability to walk, stand, lift, bend, and perform manual tasks and usually must sit or lie down due to the immense pain, nausea (to include vomiting), diarrhea, heavy bleeding, and faintness, on the first day of my period. Similarly, my Infertility not only substantially limits, but completely impedes the primary operative function of my reproductive system. *See Exhibits C-H & Exhibit J.*

   I proactively and consistently communicated my disabilities to my then supervisor, Fipps-Hernandez, on February 18th, April 29th, May 6th, May 10th, and May 12th of 2022. I also informed Jones and a representative in the Human Resources Department of my need for accommodation on May 12th of 2022. *See Exhibit K, Exhibit J, & Exhibit I (timestamps 24:36, 26:26, 27:08, 59:57, 1:01:12, 1:05:44, 1:11:17 – 1:12:06, & 1:13:44).*

2. Teleworking one day out of the month would not have disrupted NCDPS's operations, nor would it have imposed undue hardship on the Department. Per the agency's own policy, teleworking is identified as an available and reasonable accommodation for employees. All of my job duties, both essential and secondary, could have been and were always, fulfilled while teleworking. *See Exhibit M (p. 9) & Exhibit L.*

3. Fipps-Hernandez and Jones refused to engage in the interactive process required for me to secure necessary medical accommodations. Alongside blatantly ignoring each request, their refusal was explicitly voiced in the meeting on May 12th, 2022 where Jones outright stated there would "absolutely not" be any medical accommodations granted to me and that "we all have medical conditions and appointments". At no point

3

was I ever asked to submit medical documentation or referred to another department or individual for the processing of my medical accommodation request. *See Exhibit O, Exhibit X, Exhibit P, Exhibit I (timestamps 25:18-31:26, 34:49-36:17).*

4. Despite the challenges posed by my medical conditions, I remained a competent employee for the role I was hired for within NCDPS and was often praised for the work I performed prior to the start of managerial mistreatment. Even after the constructive discharge, Jones managed to write a statement expressing the substantial contributions I made to the Department while in my role. *See Exhibit Q.*

5. My constructive discharge was directly caused by the discriminatory actions imposed by NCDPS upon my request for medical accommodations. The hostile demeanor and ultimatum given by Jones during the May 12th meeting forced me to conclude that I had no choice but to resign if I wanted to exercise the right to effectively manage my disabilities. *Exhibit P.*

6. I consistently and clearly, via various mediums, communicated the nature of my disabilities and the need for medical accommodation to Fipps-Hernandez and Jones. After attempting to engage in both of these protected acts, I was immediately threatened by Jones with termination. *See Exhibit S, Exhibit P, & Exhibit R.*

7. Adverse employment action in the form of harassment were taken against me on May 6th, 2022 when Fipps-Hernandez labeled my use of earned sick leave for my medical conditions as "excessive" and indicative of "poor work ethic". This form of adverse employment action was also exhibited during the May 12th meeting where Jones and Hernandez unjustifiably pulled me away from my work duties to scrutinize my

4

performance and use of sick leave without providing documentation from any performance review. *See Exhibit R & Exhibit P.*

8. Soon after communicating my medical condition and need for accommodations, Fipps-Hernandez criticized my use of sick leave, which I had already informed her was being used to manage these conditions. Additionally, a mere two days after informing Fipps-Hernandez of my scheduled surgery for Endometriosis evaluation, I was called into a confrontational meeting where my job security was threatened based in part on my use of sick leave to manage my disabilities. After this meeting, feeling backed into a corner with no viable options left, I felt compelled to resign. *See Exhibit K, Exhibit I (timestamps 1:02:50 – 1:04:54), Exhibit P, & Exhibit R.*

9. When I reminded Fipps-Hernandez of my medical conditions and the reason for my use of sick leave during the phone call on May 6th, she invalidated my conditions by suggesting that sick leave should only be used when "really" needed. In the meeting with Jones and Fipps-Hernandez on May 12th, despite explaining my disabilities and the need to attend medical appointments to treat them, Jones stated, "We ALL have medical issues. We ALL have medical appointments." *See Exhibit O, Exhibit X, Exhibit P, & Exhibit R.*

10. Not only were my medical accommodation requests outright denied on May 12th, but I was also threatened with statements where Jones stated that I was unfit to be promoted to Juvenile Court Counselor from Juvenile Court Counselor Trainee. I was also threatened with formal write-ups and termination by Jones during the May 12th meeting. No documentation was ever presented or given to me that justified these threats. *See Exhibit P & Exhibit R.*

5

11. After the meeting on May 12th, I immediately reached out to the HR department at NCDPS. Despite detailing my experience and the actions of my superiors, I was given limited options for redress, one of which included filing a complaint through the very individuals who were responsible for creating the hostile and discriminatory work environment. Additionally, on May 15th, 2022, I completed an exit survey that was sent to me by Human Resources Benefits Representative, Tia Wilder, which detailed all of the allegations mentioned in this complaint amongst other details that revealed the toxic work environment I was made to endure. I also sent a follow-up email to Wilder providing more details due to limited space on the survey form. I never received a response to this email. See *Exhibit N & Exhibit P*.

12. I subsequently emailed Director of Court Services, Maxine Armwood, on May 18th, 2022, also informing her of everything that occurred during my tenure with NCDPS and requesting to be transferred to another district as opposed to resigning in an attempt to maintain my employment with NCDPS. I did not receive a response to this email, but was reached out to by Central Area Administrator, Miguel Pitts, on the same day via phone. Pitts informed me that I could not be transferred to another county due to the length of my employment with NCDPS being insufficient, and that my only option for recourse at that point was to file an EEOC claim. *See Exhibit R.*

## IV.  PRAYER FOR RELIEF AND DAMAGES SOUGHT

### Actual Compensatory Damages

I am requesting compensatory damages in the amount of $84,381.30 to adequately address and redress the harm and loss I have suffered due to the Defendant's unlawful actions. These damages span multiple categories, which include but are not limited to: costs for mental health

services to treat emotional distress and mental suffering; termination fees for the premature ending of my lease agreement due to my inability to afford rent following the constructive discharge; moving expenses incurred during the process of relocating; back pay to compensate for lost wages and benefits; and additional costs related to my Federal Public Service Loan Forgiveness (PSLF) program eligibility.

1. **Therapy/Mental Health Services:** A total of $5,593 has been incurred to cover the costs of therapy and other mental health services, which were necessary due to the emotional and psychological stress caused by the Defendant's conduct. *See Exhibit T.*

2. **Lease Term & Moving Fees:** A sum of $1,149 was required to terminate my lease prematurely, an action that was necessitated by the circumstances of my wrongful termination. A combination of moving fees from Life Storage ($1,133.53), American Storage ($520), and UHaul ($47.01) amounting to $1,700.54 were incurred as I had to relocate following my unjust termination. This totals $2,849.54. *See Exhibit U.*

3. **Back Pay:** Given my constructive discharge on May 19th, 2022, the back pay from the period spanning from June 2022 (the month following my constructive discharge from NCDPS) until I was able to secure comparable employment, which was in May 2023, totals $70,717.68. This is reflective of the income and benefits lost, as calculated by the Office of Sate Human Resources (OSHR), as a direct result of the Defendant's unlawful actions.

    The total compensation package I would have earned during the period of June 2022 to November 2022 totals $29,034.34; if not for my constructive

7

discharge. This total includes a prorated salary of $18,300 and a total value of benefits of $10,734.34. From here, I would have been formally promoted to Juvenile Court Counselor and received an increase in compensation. Because I was already performing the duties of an Intake Court Counselor and would have served in that capacity for a year by December 2022, and had achieved valedictorian in the Juvenile Justice Basic Training program as a Trainee, it is highly reasonable to believe that I would have been compensated at the mid-point of the compensation range. This would have resulted in a prorated salary of $27,209 and a prorated total value of benefits of $14,474.34. The total compensation package is $41,683.34 for the period of December 2022 to May 2023. It was not until May of 2023 that I was able to obtain comparable employment that would allow me the benefits and use of skills that my position at NCDPS did; this is despite my perilous and incessant attempts to secure employment of this nature from the moment of my constructive discharge from NCDPS. *See Exhibit V, Exhibit Z, & Exhibit Y.*

4. **Federal Public Service Loan Forgiveness Eligibility**: A total of $5,221.08 is sought to compensate for the 12 months of eligible service towards the Federal Public Service Loan Forgiveness (PSLF) program that I was deprived of from May 2022 to May 2023 due to my constructive discharge. I resumed work in the public sector in May 2023, but still suffered a loss in program eligibility over the course of a year. This loss has set back my federal loan forgiveness eligibility timeline and is time that I will never be able to recuperate and apply towards my eligibility for this program. The amount owed for this damage was calculated based on the Standard Repayment Model for student loans where my monthly student loan

8

payments total $435.09 per month and is multiplied to account for the 12 months I lost of serving in the public sector due to the constructive discharge. *See Exhibit W.*

The breakdown of actual compensatory damages that I am seeking are as follows:

| Actual Compensatory Damages | |
| --- | --- |
| **Therapy/Mental Health Services** | $5,593.00 |
| **Lease Term & Moving Fees** | $2,849.54 |
| **Back Pay** | $70,717.68 |
| **Public Service Loan Forgiveness Eligibility** | $5,221.08 |
| **Total** | **$84,381.30** |

### General Compensatory Damages

As remedy for the extreme mental anguish and emotional distress imposed by the Defendant's unlawful acts and consequential events that occurred thereafter that resulted in over a year of therapy and other mental health services, I am requesting three times the amount of actual compensatory damages to total $253,143.90. *See Exhibit T.*

### Punitive Damages

Due to the Defendant's blatant and willful disregard in allowing me to access my rights to a reasonable accommodation for my disabilities, as evidenced by Jones' ability to recite the Department's ADA policy and then immediately admit that he had not followed it in Exhibit I (timestamps *25:18-31:26, 34:49-36:17*), I am requesting five times the amount of actual compensatory damages for punitive damages to account for all five unlawful acts imposed against me, as alleged, in the amount of $421,906.50. Fipps-Hernandez's bringing up my medical

9

accommodation request during the May 12th meeting by stating, "*and* she asked me for medical accommodations" in the middle of Jones' lecture about my use of earned sick leave indicates that she did so not in good faith, but as an attack to further reprimand me for seeking to access my rights. It was in response to this that Jones stated that there would "absolutely not" be any medical accommodations provided to me. Jones' given explanation, **after** the fact, as to why he failed to seriously consider my medical accommodation request was that he would have to do the same for every female in the office *(See Exhibit I (timestamp 23:14))*. This statement provides further insight into his views of sheer disregard and callousness towards my disabling conditions. This alone reveals a motive for his discriminatory actions that warrants an award of punitive damages. In addition to this, the Defendant had numerous opportunities to correct these unlawful actions across multiple individuals in leadership positions but chose not to provide any recourse other than to refer me to the EEOC.

### Total Damages

The total award is $759,431.70; however, as my Complaint demanded relief in the amount of $500,000, I will limit the relief sought for Default Judgment to that of $500,000.

### V. CONCLUSION

In light of the foregoing, I, Christian Proffitt, respectfully submit that the Court grant a Default Judgment in my favor against the Defendant, North Carolina Department of Public Safety (NCDPS). The Defendant has not only violated multiple provisions under the ADA, as amended, but has also refrained from answering or defending against the amended Complaint; thus, making them liable for Default Judgment as per Rule 55. The Defendant's failure to engage in the interactive process for reasonable accommodation, blatant discrimination based on disability, and

10

Case 5:23-cv-00306-M-RN    Document 11    Filed 09/27/23    Page 10 of 11

retaliatory practices, all of which led to the constructive discharge, have caused me both financial loss and emotional distress.

The factual allegations and evidence clearly substantiate my entitlement to the relief sought. I have provided comprehensive proof to corroborate each claim, including but not limited to an Affidavit of Service, medical records, emails, and testimonies – all of which remain uncontested due to the Defendant's failure to answer or otherwise defend in this matter. As per the relief and damages section, I am requesting actual compensatory damages totaling $84,381.30 to redress the multiple forms of harm I've suffered. Given the extent of emotional trauma incurred, I request general compensatory damages in the amount of $253,143.90. Finally, I contend that I am owed $421,906.50 in punitive damages for the Defendant's willful and intentional unlawful actions imposed against me, as well as their failure to rectify the matter despite multiple individuals within leadership roles being given multiple opportunities to do so. However, I only ask the Court to provide a Default Judgment in the amount of $500,000, being that this is the amount that I have demanded in my filed Complaint, as well as any and all additional relief as determined fair and just by the Court.

It is not only appropriate, but imperative, that the Court issue a Default Judgment as requested, thereby serving justice and providing much-needed relief and closure for the injuries I have sustained due to the Defendant's unlawful actions.

Dated: September 27, 2023

Christian Proffitt
Plaintiff (Pro Se)